UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Patricia Crumley, on behalf of
herself and all others similarly situated,

    Plaintiff,

vs.

                                                CLASS ACTION COMPLAINT AND
                                                  DEMAND FOR JURY TRIAL

TIME WARNER CABLE, INC.,
A DIVISION OF TIME WARNER
ENTERTAINMENT COMPANY, INC.,

    Defendant.

_____

       Plaintiff, Patricia Crumley, on behalf of herself and all others similarly situated, brings this action against Defendant Time Warner Cable, Inc., a division of Time Warner Entertainment Company, Inc. (herein "TWC").  Based upon personal knowledge, information, and belief, and the investigation and research of her counsel, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

       1.    This Class Action Complaint is filed and these proceedings are instituted pursuant to Rule 23 of the Federal Rules of Civil Procedure.

       2.    The Court has original jurisdiction over this action pursuant to Section 4 of the Class Action Fairness Act and 28 U.S.C § 1332(d)(2)(A), because the matter in controversy exceeds $5,000,000.00, exclusive of interests and costs, and Plaintiff is a citizen of a state different from TWC.

       3.    Plaintiff resides in this district, and Plaintiff made payments to Defendant while residing in the district.  Venue is thus proper in this District pursuant to 28 U.S.C. § 1391(b).

## NATURE OF THE ACTION

4. Plaintiff brings this action on behalf of herself and all other similarly situated individuals and entities who at any time from 2002 to the present purchased any of TWC's services.

5. TWC deceptively and unfairly overcharged customers for upgrades to its cable television service, for which it had been previously reimbursed from its customers located in the State of Minnesota.

6. As a result, TWC reaped millions of dollars in improperly increased revenues, while Plaintiff and Class members were double-billed and overcharged for TWC services.

## THE PARTIES

7. Plaintiff was, and is, at all times relevant to these proceedings, a resident and citizen of the City of Minneapolis, Minnesota and purchased services from TWC.

8. The Defendant, TWC, is a corporation organized and existing under the laws of the State of Delaware, with its principal office and place of business located in Stamford, Connecticut, but doing business in at least 33 states and specifically in the State of Minnesota.

9. TWC was formed in 1989 through the merger of Time Inc.'s cable television company, American Television and Communications Corporation, and Warner Cable, a division of Warner Communications. Defendant is the second largest cable operator in the United States and employs nearly 46,000 individuals.

10. Defendant TWC was in the business of providing cable television, internet, and telephone service for residents of the State of Minnesota. Due to a subscriber exchange

arrangement with Comcast Corporation, by mid-2007, TWC no longer provides service to residents of the State of Minnesota.

## FACTUAL ALLEGATIONS

11. In the mid 1990s, TWC entered into a "Social Contract" (hereinafter "SC") with the Federal Communications Commission (hereinafter "FCC"). Upon information and belief, the SC provided that TWC would address over 900 rate complaints made to the FCC concerning TWC, by upgrading its cable systems in its service areas to fiber optic service (hereafter "the upgrades"). This would in turn allow TWC to provide to its customers, *inter alia*, expanded capacity of its cable television systems for additional television networks and channels, as well as high-speed internet service and telephone service.

12. The SC called for an approximately $4 billion investment by TWC. The SC allowed TWC to pre-capitalize the cost of the upgrade to each customer in the local franchise area (LFA) up to $180.00 per subscriber over 5 years (1995 through 2000). In 1996, pre-capitalization surcharges were assessed to cable subscribers and collected by TWC. Upon information and belief, TWC made the promised upgrades to its cable systems.

13. Thereafter, the FCC developed FCC Form 1235 as an abbreviated cost-of-service filing. Form 1235 enabled cable operators not subject to a social contract to justify rate increases based on significant cable expenditures used to improve regulated cable television services. The rationale behind the Form 1235 was to allow any cable operator to recover the regulated service portion of any upgrade by adding a network upgrade surcharge to the regulated service rates determined pursuant to FCC Form 1235 filing.

14. The stated network upgrade, however, is not adjusted for inflation, but instead remains unchanged over the useful life of the improvement, determined in accordance with FCC

cost-of-service rules. Each bill or rate to cable customers will or would, therefore, have 2 components: (1) a benchmark rate for cable television service; and (2) the network upgrade surcharge.

15. TWC was often able to collect sufficient upgrade revenues to fully fund the cost of the fiber optic upgrade pursuant to the SC. Upon information and belief, TWC did not implement nor complete a subsequent upgrade other than that completed pursuant to the SC. Because TWC did not perform a subsequent substantial upgrade to its cable system other than the upgrade completed under the SC, TWC was not eligible to file a form FCC 1235 to recover any further network upgrade expenses subsequent to those recovered under the SC. However, using the Form 1235, TWC charged its customers a percentage of the cost for the same upgrades completed under the SC by incorporating a monthly network upgrade charge to the monthly rate for basic cable service.

16. Upon information and belief, TWC double-charged each Minneapolis customer for an upgrade that was provided for in the SC and charged pursuant thereto.

17. This overcharging and double-charging has been found in numerous communities where rates have been reviewed. Upon information and belief, it is and was Defendant's policy and such policy has been and is being repeated in many TWC served communities.

18. Upon information and belief, Defendant's policy of overcharging and double-charging occurred throughout the State of Minnesota and may result in additional claims being brought on behalf of Minnesota residents who are not residents of Minneapolis.

19. Plaintiff has been a customer of TWC since at least 1999. Upon information and belief, Plaintiff has been overcharged for reimbursement of TWC's upgrades that were previously paid for under the SC.

## **CLASS ACTION ALLEGATIONS**

20. This action is brought by Plaintiff on her own behalf and on behalf of all other persons similarly situated, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure. The class of persons to which Plaintiff seeks to represent is defined as:

> All individuals, proprietorships, partnerships, corporations, and other entities located in the City of Minneapolis, Minnesota that purchased any of TWC's services at any time from 2002 through the present.

21. The Class excludes all claims by any persons or entities that have already commenced an individual civil action against the Defendant related to the subject matter of this litigation. Also excluded from the Class are the following: Defendant; any parent, subsidiary, affiliate, and/or controlled person of Defendant; the officers, directors, agents, servants, or employees of any of the same, and the immediate family members of any such person.

22. Plaintiff is unable to state precisely the size of the Class, but the members of the Class number at least into the tens of thousands. The Class is sufficiently numerous that joinder of all its members is impracticable.

23. There are numerous common questions of law and fact with respect to Defendant TWC's conduct and overcharging of their customers. Among those questions common to the Class are:

> (a) Whether TWC overcharged and/or multiple-billed its customers for upgrades previously paid for/reimbursed under the SC;
>
> (b) Whether Defendant negligently, recklessly, and/or fraudulently and deceptively concealed from its consumers the fact that the costs for the upgrades under the SC had previously been paid for and/or reimbursed;

5

  (c)  Whether Defendant misrepresented: (1) the true nature and amount of its expenses and charges under the Form 1235; and (2) the amount reimbursed under the SC and the Form 1235 for its upgrades;

  (d)  Whether Defendant TWC failed to disclose material facts about the upgrade costs and the amounts of reimbursements, which facts were necessary to render statements made by or on behalf of Defendant TWC not misleading, when viewed in light of the circumstances under which the statements were made;

  (e)  Whether Defendant TWC engaged in fraudulent and deceptive trade practices in the charging and receiving of reimbursements for its upgrades under the SC and the Form 1235;

  (f)  Whether Plaintiff and Class Members are entitled to recover compensatory damages; and

  (g)  Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, expert witness fees, prejudgment interest, post-judgment interest, and costs of suit.

24. Based upon the above descriptions, common questions of law and fact clearly predominate within the meaning of Rule 23(b)(3) of the Federal Rules of Civil Procedure.

25. Class action treatment, given the large class and impracticability of joinder, provides a fair and efficient method for the adjudication of the controversy herein described. The class action mechanism provides an effective method whereby the enforcement of the rights of Plaintiff and Class Members can be fairly managed without unnecessary expense or duplication.

26. If Class Members were required to pursue individual litigation, it would be unduly burdensome to the federal courts of Minnesota within which individualized litigation would proceed. Individualized litigation would magnify the delay and expense to all parties in the court system of resolving the controversy engendered by Defendant. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of individual Class Members, and result in judicial consistency.

27. The claims of Plaintiff, as representative of the Class, are typical of the claims of the members of the Class.

28. Plaintiff will fairly and adequately protect the interests of the Class she represents. The interests of Plaintiff, as the Class Representative, are consistent with those of the members of the Class. Furthermore, Plaintiff is represented by experienced and able counsel that have represented plaintiff classes in other similar cases.

29. Plaintiff and Class Members envision no unusual difficulty in the management of this action as a class action.

## COUNT I

### CONSUMER FRAUD IN VIOLATION OF
### MINNESOTA STATUTES §§ 325F.68 – 325F.70

30. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 29 of the Complaint, as if fully set forth herein.

31. Defendant's acts, practices, misrepresentations, and omissions constitute fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices

in violation of the Minnesota Prevention of Consumer Fraud Act (MPCFA), Minn. Stat. § 325F.69 subd. 1.

32. Defendant TWC represented that its charges under the SC and Form 1235 were for reimbursements of expenses incurred for upgrades necessary to satisfy the SC.

33. Defendant TWC received reimbursement for all upgrade expenses permitted by the SC and continued to seek reimbursement after receiving the same.

34. Defendant TWC knew or should have known that it made false representations to Cable Television Franchise Authorities concerning its entitlement to reimbursement and the amount due for reimbursement for upgrades.

35. Defendant TWC concealed the fact that, *inter alia,* it had been reimbursed for the upgrades under the SC and was not entitled to recover any further reimbursement using the form FCC 1235. As a direct and proximate result of Defendant's fraudulent and deceptive conduct, Plaintiff and Class Members have suffered actual injury and are entitled to restitution and/or actual damages and/or equitable and injunctive relief, costs, and reasonable attorney fees pursuant to Minn. Stat. § 8.31, subd. 3a.

## COUNT II

### UNJUST ENRICHMENT

36. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 35 of the Complaint, as if fully set forth herein.

37. As a result of its deceptive practice to overcharge Plaintiff and Class members, TWC received millions of dollars worth of payments to which it is not entitled and the circumstances described in this Complaint are such that it would be unjust for TWC to retain the benefit.

38. As a result, Plaintiff and Class members have been irreparably harmed and are entitled to damages and/or equitable relief as may be determined at trial.

**WHEREFORE**, Plaintiff Patricia Crumley respectfully demands judgment against Defendant Time Warner Cable, Inc. for herself and the Class members as follows:

a. That the Court certify this action a Rule 23(b)(3) opt-out class action under the Federal Rules of Civil Procedure;

b. Awarding all damages against Defendant in an amount to be determined at trial;

c. Restitution and/or actual damages and/or equitable and injunctive relief, investigative costs, expert witness expenses, any other costs, and reasonable attorney fees pursuant to Minn. Stat. § 8.31, subd. 3a; and

d. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and all others similarly situated, hereby demands trial by jury on all issues triable at law.

Dated:   September 10, 2007                **CHESTNUT & CAMBRONNE, P.A.**

By /s/  Karl L. Cambronne
   Karl L. Cambronne, #14321
   Jeffrey D. Bores, #227699
   Brian N. Toder, #17869X
   Bryan L. Bleichner, #0326689
   3700 Campbell Mithun Tower
   222 South Ninth Street
   Minneapolis, MN 55402
   (612) 339-7300
   Fax:  (612) 336-2940

A. Hoyt Rowell, III
T. Christopher Tuck
James L. Ward, Jr.
RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, L.L.C.
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
(843) 727-6500
Fax:  (843) 216-6509

Gary K. Shipman
William G. Wright
SHIPMAN & WRIGHT, LLP
11 South Fifth Street
Wilmington, NC 28401
(910) 762-1990
Fax:  (910) 762-6752

Michael W. Sobol
Joseph R. Saveri
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, Suite 3000
San Francisco, CA 94111-3339
(415) 956-1000
Fax:  (415) 956-1008

**ATTORNEYS FOR PLAINTIFF**