UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Patricia Crumley, on behalf of herself and all others similarly situated, | Court File No. 07-cv-3946 (JNE/JJG) |
| Plaintiff, | |
| vs. | **FIRST AMENDED CLASS ACTION AND DECLARATORY JUDGMENT COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Time Warner Cable, Inc., a division of Time Warner Entertainment Company, Inc., | |
| Defendant. | |

---

Plaintiff Patricia Crumley, on behalf of herself and all others similarly situated, brings this action against Defendant Time Warner Cable, Inc., a division of Time Warner Entertainment Company, Inc. (herein "TWC"). Based upon personal knowledge, information, and belief, and the investigation and research of her counsel, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of herself and all other similarly situated individuals and entities who at any time from 2002 to the present purchased any of TWC's cable services.

2. TWC deceptively and unlawfully overcharged customers for upgrades to its cable television service, for which it had been previously reimbursed from its customers located in the City of Minneapolis, State of Minnesota.

3. As a result, TWC reaped millions of dollars in improperly increased revenues, while Plaintiff and Class members were unlawfully overcharged by TWC.

4. This action includes a request for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure; there exists an actual controversy among the parties.

## JURISDICTION AND VENUE

5. This First Amended Class Action and Declaratory Judgment Complaint is filed and these proceedings are instituted pursuant to Rule 23 of the Federal Rules of Civil Procedure.

6. The Court has original jurisdiction over this action pursuant to Section 4 of the Class Action Fairness Act and 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds $5,000,000.00, exclusive of interests and costs, and Plaintiff is a citizen of a state different from TWC.

7. Plaintiff resides in this district, and she made payments to TWC, which conducted business in this District. Venue is thus proper in this District pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

8. Plaintiff was, and is, at all times relevant to these proceedings, a resident and citizen of the City of Minneapolis, Minnesota, and was a TWC subscriber. TWC deceptively and unlawfully charged Plaintiff for system upgrades it never undertook and for which Plaintiff paid.

9. TWC is a corporation organized and existing under the laws of the State of Delaware, with its principal office and place of business located in Stamford, Connecticut. TWC has done business in at least 33 states, including the State of Minnesota.

10. TWC was formed in 1989 through the merger of Time Inc.'s cable television company, American Television and Communications Corporation, and Warner Cable, a division of Warner Communications. TWC is the second largest cable operator in the United States and employs nearly 46,000 individuals.

11. TWC was in the business of providing cable television, internet, and telephone service for residents of the State of Minnesota. Due to a subscriber

exchange arrangement with Comcast Corporation, TWC, by mid-2007, no longer provided service to residents of the State of Minnesota.

## FACTUAL ALLEGATIONS

### I.     Federal and Local Cable Regulation

12.     In 1984, Congress passed the Cable Communications Policy Act of 1984 ("1984 Cable Act") that, for the most part, deregulated cable service rates.

13.     By 1992, cable rates had increased at three times the rate of inflation and public outcry over these skyrocketing prices led to the passage of the Cable Television Consumer Protection and Competition Act of 1992 ("1992 Cable Act").

14.     The thrust of the 1992 Cable Act was to regulate cable rates where effective competition did not exist.  It provided for basic tier cable rate regulation until a defined threshold of competition was reached within a local franchise area, at which time the rate regulation would cease.  It also authorized the Federal Communications Commission ("FCC") to regulate rates for upper tiers of cable service (cable television service beyond the limited basic cable television channels) in noncompetitive markets and authorized cable subscribers, franchising authorities or other interested parties to file complaints directly with the FCC to initiate FCC investigation of upper tier cable rates. An outpouring of cable rate complaints ensued.

15.     With the stated goal of further promoting competition and improving service for customers, Congress passed the Telecommunications Act of 1996 ("1996 Act"). Among its far reaching deregulatory effects, the 1996 Act removed the right of cable subscribers to file rate complaints directly with the FCC and sunset, on March 31, 1996, upper tier cable rate regulation by the FCC without any evidentiary requirement that cable markets were competitive.

**II.     The Social Contract and the Minneapolis 750 MHz Upgrade**

16.     As a means of settling large numbers of rate complaints against various cable operators, the FCC negotiated and finalized a settlement with various cable operators that it labeled the "Social Contract" ("SC").  Upon information and belief, the SC provided for the dismissal of over 900 individual rate complaints against TWC alone; in exchange, TWC was required to upgrade its cable systems in the majority of its service areas to 750 Mhz service ("the upgrades").  The upgrades would allow TWC to provide to its customers, *inter alia*, expanded capacity of its cable television systems for additional television networks and channels as well as advanced telecommunications services. TWC and other cable television companies signed the SC on or around November 30, 1995.

17. As part of the SC, the FCC allowed TWC to pre-capitalize the approximately $4 billion cost of the upgrades by charging each subscriber in the local franchise area up to a total of $180.00 spread over five years, from 1996 through 2000. Specifically, the FCC allowed TWC to charge each customer $1 per month for the first year, $2 per month for the second year, $3 per month for the third year, $4 per month for the fourth year, and $5 per month for the fifth year, for a total of up to $180.00 per customer, to pay for the systems upgrade.

18. Under the terms of the SC, TWC was precluded from charging an amount in excess of $180 per customer for the system upgrades.

19. From 1996 through 2000, TWC assessed and collected from its subscribers the allowed pre-capitalization surcharges and completed the promised upgrade to its cable system.

### III. FCC Form 1235

20. Pursuant to the 1992 Cable Act, the primary method developed by the FCC for establishing initial rates for cable service was a "benchmark formula," designed to ensure that an operator's regulated rates did not exceed what the operator would charge if it faced effective competition. At the same time, the FCC realized that the benchmark approach might deny cable operators in high cost areas the opportunity to recover their legitimate costs, and it

developed an alternative approach to establish initial cable rates based on cost-of-service showings.

21. By 1994, the FCC established a streamlined ("abbreviated") cost-of-service process for operators who had established their initial rates using the benchmark process but had an interest in recovering "significant capital expenditures" such as a fiber optic upgrade. The actual Form 1235, which embodied this abbreviated process, was developed in 1996. The rationale behind the Form 1235 was to allow any cable operator to recover the cost-of-service portion of any upgrade by adding a network upgrade surcharge, determined pursuant to a Form 1235 filing, to the regulated service rates. A Form 1235 could not be filed unless a significant upgrade to the cable system had been completed.

22. Under the SC, TWC was required to upgrade its cable systems and was limited to an additional charge of $180 per subscriber over five years, ending in 2000.

23. TWC did not implement or complete any significant upgrade of its cable system subsequent to the upgrade completed pursuant to the SC. Because TWC did not perform any subsequent substantial upgrade to its cable system other than the upgrade completed under the SC, TWC was not eligible to file a Form 1235 to recover any further network upgrade expenses. Nevertheless,

7

TWC submitted a Form 1235 dated October 2, 2001, and it thereafter unlawfully overcharged its basic service customers an upgrade fee, essentially for the same upgrade completed under the SC, by incorporating a monthly network upgrade charge into the regulated monthly rate for basic cable service.

24.  Upon information and belief, by filing Form 1235 without having completed any subsequent substantial upgrades, TWC unlawfully overcharged each Minneapolis customer for an upgrade for which it was not permitted to be reimbursed.  Upon information and belief, TWC did not file with the FCC a "Petition for Special Relief and for a Determination of Effective Competition" for the Minneapolis area, nor was any such petition granted revoking the City of Minneapolis' rate regulatory authority.

25.  This unlawful overcharging has been found in numerous communities where rates have been reviewed.  Upon information and belief, it is and was TWC's policy and such policy has been and is being repeated in many TWC-served communities.

26.  Upon information and belief, TWC's policy of unlawfully overcharging occurred throughout the State of Minnesota and may result in additional claims being brought on behalf of Minnesota residents who are not residents of Minneapolis.

27. Plaintiff was a customer of TWC since at least 1999 and until Minneapolis entered into the subscriber exchange arrangement. Upon information and belief, TWC unlawfully charged Plaintiff for reimbursement of TWC's upgrade for which it was not permitted to be reimbursed.

## CLASS ACTION ALLEGATIONS

28. This action is brought by Plaintiff on her own behalf and on behalf of all other persons similarly situated, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure. The class of persons to which Plaintiff seeks to represent is defined as:

> All individuals, proprietorships, partnerships, corporations, and other entities located in the City of Minneapolis, Minnesota that purchased any of TWC's cable services during any time following the filing of a Form 1235 on October 2, 2001 through the present.

29. The Class excludes all claims by any persons or entities that have already commenced an individual civil action against TWC related to the subject matter of this litigation. Also excluded from the Class are the following: TWC; any parent, subsidiary, affiliate, and/or controlled person of TWC; the officers, directors, agents, servants, or employees of any of the same, and the immediate family members of any such person.

30.     Plaintiff is unable to state precisely the size of the Class, but the members of the Class number at least into the tens of thousands. The Class is sufficiently numerous that joinder of all its members is impracticable.

31.     There are numerous common questions of law and fact with respect to TWC's conduct and overcharging of their customers. Among those questions common to the Class are:

(a)     Whether TWC overcharged and/or multiple-billed its customers for upgrades previously paid for/reimbursed under the SC;

(b)     Whether TWC negligently, recklessly, and/or fraudulently and deceptively concealed from its consumers the fact that the costs for the upgrades under the SC had previously been paid for and/or reimbursed;

(c)     Whether TWC misrepresented: (1) the true nature and amount of its expenses and charges under the Form 1235; and (2) the amount reimbursed under the SC and the Form 1235 for its upgrades;

(d)     Whether TWC failed to disclose material facts about the upgrade costs and the amounts of reimbursements, which

    facts were necessary to render statements made by or on behalf of TWC not misleading when viewed in light of the circumstances under which the statements were made;

  (e) Whether TWC engaged in fraudulent and deceptive trade practices in the charging and receiving of reimbursements for its upgrades under the SC and the Form 1235;

  (f) Whether Plaintiff and Class Members are entitled to recover compensatory damages; and

  (g) Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, expert witness fees, prejudgment interest, post-judgment interest, and costs of suit.

 32. Based upon the above descriptions, common questions of law and fact predominate within the meaning of Rule 23(b)(3) of the Federal Rules of Civil Procedure.

 33. Class action treatment, given the large class and impracticability of joinder, provides a fair and efficient method for the adjudication of the controversy herein described. The class action mechanism provides an effective method whereby the enforcement of the rights of Plaintiff and Class Members can be fairly managed without unnecessary expense or duplication.

34. If Class Members were required to pursue individual litigation, it would be unduly burdensome to the state and federal courts of Minnesota within which individualized litigation would proceed. Individualized litigation would magnify the delay and expense to all parties in the court system of resolving the controversy engendered by TWC. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of individual Class Members, and result in judicial consistency.

35. The claims of Plaintiff, as representative of the Class, are typical of the claims of the members of the Class.

36. Plaintiff will fairly and adequately protect the interests of the Class she represents. The interests of Plaintiff, as the Class Representative, are consistent with those of the members of the Class. Furthermore, Plaintiff is represented by experienced and able counsel that have represented plaintiff classes in similar cases.

37. Plaintiff and Class Members envision no unusual difficulty in the management of this action as a class action.

# COUNT I
## DECLARATORY JUDGMENT DETERMINING AS UNLAWFUL TWC'S FILING OF FCC FORM 1235 TO RECOVER NONEXISTENT POST-SOCIAL CONTRACT UPGRADE COSTS

38. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 37 of the Complaint, as if fully set out here.

39. Under federal law, a cable operator such as TWC was to use Form 1235 only to recover costs after a significant cable system upgrade was made and only for an upgrade not completed pursuant to a SC.

40. TWC filed a Form 1235 in 2001 and did not complete any significant cable system upgrade other than the system upgrade to 750 MHz that it completed pursuant to the SC.

41. TWC received reimbursement for all upgrade expenses permitted by the SC and, through Form 1235, continued to charge customers for the same upgrade.

42. TWC's submission of Form 1235 to recover system upgrade costs already recovered pursuant to the SC was fraudulent and unlawful.

## COUNT II
## CONSUMER FRAUD IN VIOLATION OF
## MINNESOTA STATUTES §§ 325F.68 – 325F.70

43. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 42 of the Complaint, as if fully set out here.

44. TWC's acts, practices, misrepresentations, and omissions constitute fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in violation of the Minnesota Prevention of Consumer Fraud Act (MPCFA), Minn. Stat. § 325F.69 subd. 1.

45. TWC represented that its charges under the SC and Form 1235 were for reimbursements of expenses incurred for upgrades.

46. TWC received reimbursement for all upgrade expenses permitted by the SC and, through Form 1235, unlawfully charged customers for the same upgrade.

47. TWC knew or should have known that it made false representations to its customers concerning its entitlement to reimbursement and the amount due for reimbursement for upgrades by both filing Form 1235 and through subsequent subscriber service payment requests.

48. TWC concealed the fact that, *inter alia,* it had been reimbursed for the upgrades under the SC and was not entitled to recover any further

reimbursement using Form 1235. As a direct and proximate result of TWC's fraudulent and deceptive conduct, Plaintiff and Class Members have suffered actual injury and are entitled to restitution and/or actual damages and/or equitable and injunctive relief, costs, and reasonable attorney fees pursuant to Minn. Stat. § 8.31, subd. 3a.

## COUNT III
## UNJUST ENRICHMENT

49.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 48 of the Complaint, as if fully set out here.

49.     As a result of its deceptive practice to overcharge Plaintiff and Class members, TWC received millions of dollars worth of payments to which it is not entitled, and the circumstances described in this Complaint are such that it would be unjust for TWC to retain the benefit.

50.     As a result, Plaintiff and Class members have been irreparably harmed and are entitled to damages and/or equitable relief as may be determined at trial.

**WHEREFORE**, Plaintiff Patricia Crumley respectfully demands judgment against Defendant Time Warner Cable, Inc. for herself and the Class members as follows:

a. That the Court certify this action a Rule 23(b)(3) opt-out class action under the Federal Rules of Civil Procedure;

b. That the Court enter a declaratory judgment determining TWC's filing of Form 1235 to recover again for the same cable system upgrade costs it incurred pursuant to the SC to be unlawful.

c. Awarding all damages against TWC in an amount to be determined at trial;

d. Awarding restitution and/or actual damages and/or equitable and injunctive relief, investigative costs, expert witness expenses, any other costs, and reasonable attorney fees pursuant to Minn. Stat. § 8.31, subd. 3a; and

e. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and all others similarly situated, hereby demands trial by jury on all issues triable at law.

Dated:  October 12, 2007  **CHESTNUT & CAMBRONNE, P.A.**

By /s/  Karl L. Cambronne
  Karl L. Cambronne, #14321
  Jeffrey D. Bores, #227699
  Brian N. Toder, #17869X
  Bryan L. Bleichner, #0326689
  3700 Campbell Mithun Tower
  222 South Ninth Street
  Minneapolis, MN 55402
  (612) 339-7300
  Fax:  (612) 336-2940

A. Hoyt Rowell, III
T. Christopher Tuck
James L. Ward, Jr.
RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, L.L.C.
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
(843) 727-6500
Fax:  (843) 216-6509

Gary K. Shipman
William G. Wright
SHIPMAN & WRIGHT, LLP
11 South Fifth Street
Wilmington, NC 28401
(910) 762-1990
Fax:  (910) 762-6752

Michael W. Sobol
Joseph R. Saveri
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, Suite 3000
San Francisco, CA 94111-3339
(415) 956-1000
Fax: (415) 956-1008

**ATTORNEYS FOR PLAINTIFF**