UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Patricia Crumley, on behalf of herself
and all others similarly situated,

                Plaintiff,

vs.

Time Warner Cable, Inc., a division of
Time Warner Entertainment Company,
Inc.,

                Defendant.

Case No. 07-3946 (JNE/JJG)

**REPLY MEMORANDUM
IN SUPPORT OF
DEFENDANT'S
MOTION TO DISMISS**

---

# I.  INTRODUCTION

Plaintiff's Memorandum of Law in Opposition to Defendant Time Warner Cable, Inc.'s Motion to Dismiss ("Plaintiff's Brief") relies upon incorrect statements regarding the governing legal principles, citations to inapposite cases and a tortured attempt to avoid the plain language of the claims and allegations set out in Plaintiff's First Amended Class Action and Declaratory Judgment Complaint ("Amended Complaint" or "Am. Compl.").  At the same time, Plaintiff avoids any discussion of the binding legal precedent and governing statutes cited in support of Time Warner Cable, Inc.'s ("TWC") Motion to Dismiss.  After sifting through Plaintiff's arguments and authorities, it remains clear that Plaintiff's claims are barred by the filed rate doctrine and preempted by federal law. Therefore, Plaintiff's Amended Complaint should be dismissed in its entirety.[1]

## II. ARGUMENT AND CITATION OF AUTHORITY

### A.    THE FILED RATE DOCTRINE BARS PLAINTIFF'S CLAIMS

#### 1.    The Filed Rate Doctrine Has Been Embraced by the Eighth Circuit and the Supreme Court of Minnesota

The lead argument in Plaintiff's Brief is that the Court should not apply the filed rate doctrine because it allegedly has been "called into question . . . ."

---

[1]    As discussed in Section II(C) *infra*, in the interest of streamlining the issues before the Court, TWC hereby withdraws that part of its Motion to Dismiss or Alternatively Stay Proceedings that seeks dismissal or a stay of this action based on the terms of the arbitration clause contained in the applicable agreement between the parties.  TWC hereby waives its right to compel Plaintiff to arbitrate the claims raised in this action.  TWC respectfully requests that the Court rule on the remainder of its Motion to Dismiss based on the prohibitions of the filed rate doctrine and federal preemption, which mandate dismissal of Plaintiff's Amended Complaint in its entirety and with prejudice. *See* Sections II(A) and (B) *infra*.

(Plaintiff's Brief at 12, *citing Blaylock v. First Am. Title Ins. Co.*, 504 F. Supp. 2d 1091, 1100 (W.D. Wash. 2007).)[2]  **Plaintiff's argument, however, completely ignores the binding precedent cited by TWC in its opening brief – *i.e. H.J. Inc. v. Northwestern Bell Telephone Co*., 954 F.2d 485 (8th Cir. 1992) and *Schermer v. State Farm Fire and Casualty Co.*, 721 N.W.2d 307 (Minn. 2006)**.  Faced with facts and claims virtually identical to those in the current case, the courts in *H.J., Inc.* and *Schermer* adopted and applied the filed rate doctrine and held that the plaintiffs' claims were barred thereby.  Therefore, regardless of any "questions" allegedly raised by courts in other jurisdictions, *H.J., Inc.* and *Schermer* are binding precedent in this Court and thus the filed rate doctrine applies to Plaintiff's claims.[3]

## 2. <u>Application of the Filed Rate Doctrine Does Not Depend on Whether TWC is a "Common Carrier"</u>

Plaintiff next argues that the filed rate doctrine is only applicable to rates filed by "common carriers."  (Plaintiff's Brief at 13-16.)  Plaintiff cites <u>no authority</u> for this remarkable proposition.  Indeed, Plaintiff's suggestion is entirely contrary to the law, as courts have noted that "[w]hile the filed rate doctrine had its origins in the area of common carrier, it has subsequently been extended to apply

---

[2]  Plaintiff submits this argument regarding the filed rate doctrine under the heading "Plaintiff's Claims Are Not Preempted."  (Plaintiff's Brief, 12)  This is the first of many instances where Plaintiff conflates the distinct arguments regarding the filed rate doctrine and federal preemption.

[3]  Notably, Plaintiff makes no effort to distinguish *H.J., Inc.* or *Schermer.*  Indeed, Plaintiff's Brief does not even address these cases.

to a number of regulated industries." *Korte v. Allstate Ins. Co.*, 48 F. Supp.2d 647, 651 (E.D. Tex. 1999) (string cite omitted); *see also Hilling v. Northern States Power Co.*, 3-90 CIV 418, 1990 WL 597044, * 2-3 (D. Minn. Dec. 12, 1990), *quoting Arkansas-Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 (1981) ("The doctrine 'has been extended across the spectrum of regulated utilities.'").  Further, as this Court has noted, "the *Keough* holding has evolved through subsequent cases into a doctrine forbidding a federal court from collaterally reviewing rates filed with and approved by an appropriate regulatory agency." *Hilling*, 1990 WL 597044 at * 2.  **Indeed, once again, Plaintiff ignores the binding precedent established in *Schermer*, where the Supreme Court of Minnesota applied the filed rate doctrine to bar claims against an insurance company (clearly <u>not</u> a "common carrier") that filed its rates with the Minnesota Department of Commerce**.  *Schermer*, 721 N.W.2d at 310.  Thus, Plaintiff's wholly unsupported argument that the filed rate doctrine applies only to common carriers must be rejected.

### 3.      <u>Plaintiff Directly Challenges TWC's Rates</u>

Plaintiff next suggests that her claims should survive because -- according to Plaintiff -- they do not "directly" challenge any rates.  Specifically, Plaintiff argues that she "does not challenge a regulated rate; instead she claims she was fraudulently double-billed for a nonexistent service upgrade."  (Plaintiff's Brief at

16.)  A plain reading of the allegations contained in Plaintiff's Amended

Complaint, however, dispels any illusion that Plaintiff is not directly challenging

TWC's regulated rates in a manner strictly forbidden by the filed rate doctrine.[4]

Plaintiff's central allegation is that:

> TWC submitted a Form 1235 dated October 2, 2001, and it thereafter
> unlawfully overcharged its basic service customers an upgrade fee,
> essentially for the same upgrade completed under the SC, **by
> incorporating a monthly network upgrade charge into the <u>regulated
> monthly rate for basic cable service</u>.**

(Am. Compl., ¶ 23) (emphasis added).  Thus, by Plaintiff's own allegations, the

alleged "overcharge" of which she complains is built into TWC's "regulated

monthly rate for basic cable service."  *Id.*  The Amended Complaint leaves no

doubt that this rate increase (the "overcharge") is precisely what Plaintiff

challenges.  (*Id.*, ¶¶ 2-3, 8, 17-19, 23-27, 31(a), and 45-48.)  **Indeed, every count

of the Amended Complaint depends on Plaintiff's direct challenge to an

increase in TWC's BST rates allegedly obtained through the use of a

"fraudulent" and "unlawful" Form 1235.**  (*Id.*, ¶¶ 39-42, 45-48, 49-50.)

Finally, Count I of the Amended Complaint conclusively demonstrates that

Plaintiff directly challenges TWC's rates.  **In Count I, Plaintiff seeks a

declaration from this Court that TWC's increase in BST rates through the

alleged use of Form 1235 was "unlawful."**  (*Id.*, Count I; *see also id.* at

---

[4]  In addition to being barred by the filed rate doctrine, Plaintiff's challenge to TWC's rates is
also preempted as impermissible rate regulation.  This issue is discussed in Section B, *infra.*

"Wherefore" clause, ¶(b).)  Plaintiff's challenge to the lawfulness of TWC's alleged Form 1235 filing is a *per se* attack on the BST rate, as the only purpose of Form 1235 is to add an upgrade cost recovery component to the BST rate.  *See, e.g.,* 47 C.F.R. § 76.922(j)(1) (providing that Form 1235 may be used to increase BST rates to recover cost of "significant network upgrades requiring added capital investment.").  Thus, regardless of Plaintiff's attempt to recast her claims as only "indirectly" involving TWC's rates, Plaintiff's Amended Complaint leaves no doubt that she directly challenges an increase in TWC's BST rates allegedly obtained through the use of Form 1235.

### 4.     The Filed Rate Doctrine Bars Plaintiff's Rate Challenge

There is no dispute that Plaintiff seeks "actual damages" and/or "restitution" based on the difference between the rate actually charged by TWC and the rate that would have been approved but for TWC's alleged fraud – *i.e.*, a refund of the alleged "overcharges" resulting from TWC's allegedly fraudulent rate increases. (Am. Compl., ¶¶ 48-50.)  As stated by the Eighth Circuit in *H.J., Inc.*, **"[t]he filed rate doctrine prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct at issue."**  954 F.2d at 488 (emphasis added).  Like the plaintiffs in *H.J., Inc.*, Plaintiff Crumley claims that she has "been injured because [she] paid too much for [cable] services . . . a damage concept that falls squarely within the

filed rate doctrine." *Id.* at 492.  Thus, Plaintiff's claims are barred by the filed rate

doctrine.[5]

### B.    PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE CABLE ACT

#### 1.    Plaintiff's Rate Challenge is Preempted as Impermissible Rate Regulation

Plaintiff does not dispute that the Cable Act preempts state law claims

(including consumer protection claims) that directly challenge or would directly

affect cable rates.  Rather, Plaintiff argues only that her present complaint is viable

because she claims it would only "indirectly affect" cable rates.  (Plaintiff's Brief

at 22, 24).  As noted above, that argument is utterly without merit, as even a

---

[5]  Plaintiff cites the Court to a number of cases that supposedly support Plaintiff's contention that the filed rate doctrine should not be applied here.  (Plaintiff's Brief at 17, 19.)  **None of those cases, however, support Plaintiff's argument because they: (a) deal with rates that were not filed with a regulatory authority;** (*See Spielholz v. Superior Court*, 86 Cal. App. 4th 1366, 1380 (2001) ("here it is undisputed that wireless telephone service providers in California are exempt from the tariff filing requirement.  Since there is no tariff filing requirement, the filed rate doctrine is inapplicable."); *Tenore v. AT&T Wireless Servs.*, 962 P.2d 104, 109 (Wash. 1998) (filed rate doctrine did not apply "[b]ecause there is no tariff filing requirement."); *Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 377 (N.J. Super. 2002) (filed rate doctrine did not apply because defendant did not file its rates).); **(b) do not even discuss the filed rate doctrine;** (*See In re Long Distance Telecomm. Litigation*, 831 F.2d 627 (6th Cir. 1987)); **(c) involve the application of the laws of a state other than Minnesota;** (*See Pink Dot, Inv. v. Teleport Comm. Group*, 107 Cal. Rptr. 2d 392, 298 (Cal. Ct. App. 2001) (holding that, under California law, "[t]here is no parallel state filed rate doctrine that would operate to bar *all* state statutory or common law claims.") (emphasis in original); **(d) involve claims that do not challenge the rates paid for the services at issue;** (*See Qwest Corp. v. Kelly*, 59 P.3d 789, 800 (Ariz. 2002) (without determining whether State of Arizona would adopt filed rate doctrine, court held doctrine would not apply where "the claims relate to the marketing and selling of a product to consumers that they may not have needed; the claims have nothing to do with the reasonableness of the rate charged for the services . . . ."); **or (e) involve a challenge by a regulated entity (not a customer or consumer) to a decision by the relevant regulatory authority regarding allocation of the regulated entity's costs;** (*See United Cities Gas Co. v. Illinois Commerce Com'n*, 643 N.E.2d 719, 731-732 (Ill. 1994)).  Such inapposite decisions have no bearing on the issues before the Court.

cursory reading of the Amended Complaint establishes that it directly targets TWC's BST rate and would directly impact that rate.

Notably, **Plaintiff recognizes that "a claim that directly challenges a rate and seeks a remedy to limit or control the rate prospectively or retrospectively is an attempt to regulate rates and therefore preempted."** (Plaintiff's Brief at 18, *quoting Spielholz,* 86 Cal. App. 4th at 1374-75 (emphasis added).) There is no question that Plaintiff's claims directly challenge TWC's rate, nor is there any doubt that Plaintiff seeks remedies that would limit or control the rate both prospectively (by having it declared "unlawful") and retrospectively (by awarding damages in the form of a refund of the increase in TWC's BST rates allegedly obtained through the purportedly "unlawful" use of Form 1235). Accordingly, even Plaintiff's authorities confirm that her claims are preempted. *See Spielholz,* 86 Cal. App. 4th at 1374-75. *See also, e.g., Time Warner Cable Inc. v. Doyle,* 66 F.3d 867, 882 (7th Cir. 1995) ("the rate structure is a federal matter and state consumer laws that impact upon it conflict with the operation of the rate structure"); *Westmarc Comm., Inc. v. Conn. Dep't of Public Utility Control*, 807 F. Supp. 876, 884-89 (D. Conn. 1990) (lawsuit to prevent cable operator from including pass through charge for fines imposed by state in its rates was tantamount to rate regulation and therefore preempted); *City of Dubuque v. Group W Cable, Inc.*, No. C 85-1046, 1987 WL 11826, *2 (Feb. 25, 1987 N.D. Iowa),

*quoting* H.R. Rep. No. 98-934, pt. IV, at 74 (1984) ("[a] state or franchising authority may not, for instance, regulate the rates for cable services in violation of section [543], and attempt to justify such regulation as a 'consumer protection' measure."); 47 C.F.R. § 76.981(c) ("State and local governments may not enforce state and local consumer protection laws that conflict with or undermine . . . any other sections of this Subpart that were established pursuant to Section 3 of the 1992 Cable Act, 47 U.S.C. § 543).[6]

## 2. Plaintiff's Claims Would Require the Court to Construe and Apply Ratemaking Regulations

The fact that the Court will have to construe and apply the terms of the Social Contract, as well as the rules regarding Form 1235, further confirms that Plaintiff's claims are tantamount to rate regulation. For example, Plaintiff's

---

[6] The preemption authorities relied upon by Plaintiff are inapposite, as the claims in those cases only incidentally involved or impacted the rate. For example, *Spielholz,* 86 Cal. App. 4th 1366 -- a case that does not even involve cable rates -- involved false advertising claims that did not require the Court to invalidate any rate component or to examine and construe ratemaking mechanisms and evaluate the defendant's conduct with respect to same. Similarly, in *Morrison v. Viacom, Inc.*, 53 Cal. App. 4th 1514, 1523-24 (1997), the plaintiff did not challenge any rate, but instead attacked Viacom's allegedly anticompetitive practice of "tying" service offerings – *i.e.* requiring the purchase of one offering in order to receive another distinct service. Likewise, in *Minnesota v. Worldcom, Inc.*, 125 F. Supp.2d 365 (D. Minn. 2000) -- another non-cable case -- the court declined to find preemption only because "nothing in the State's [false advertising] action requires a determination of whether the rates Worldcom filed with the FCC are valid and enforceable." *Id.* at 371-72. The instant matter presents the opposite scenario, as Plaintiff seeks a declaration that the alleged Form 1235 component of TWC's BST rate is invalid (*i.e.* "unlawful") and otherwise attacks that rate. Thus, unlike the present matter, none of the cases relied upon by Plaintiff required the Court to:  (1) determine the validity of a specific rate filing or rate component; (2) reverse an established rate or excise a component thereof in order to award damages; (3) determine whether or how a regulated entity may use a particular rate setting mechanism (*i.e.* Form 1235); or (4) examine and construe ratemaking devices (*i.e.* the Social Contract and Form 1235) and the rules pertaining thereto to determine liability.

theories turn upon her allegations that the Social Contract:  (1) required TWC to
upgrade its Minneapolis system; (2) forever limited TWC's recovery of these
upgrade costs; (3) precluded TWC from charging an amount in excess of $180 per
CPST customer over five years in order to pay for the system upgrades; and (4)
rendered TWC ineligible to ever use Form 1235 to recoup any part of the Social
Contract upgrade costs.  (*See* Am. Compl. at Section II and ¶¶ 16-19, 22-24, 39,
46.)  These (erroneous) allegations confirm that in order for the Court to consider
Plaintiff's claims, the Court must examine, interpret and apply the Social Contract
and the FCC Rules regarding Form 1235.  Construing and applying rate setting
mechanisms to determine the validity of a rate, or the means by which it was set, is
an exercise in rate regulation *per se.*[7]

---

[7]  It is also worth noting that to the extent Plaintiff's claims rely upon the Social Contract, those
claims are preempted by the terms of the Contract itself.  That is, ***the Social Contract expressly
provides that it cannot be enforced by private persons such as Plaintiff Crumley***.  Social
Contract, ¶ I(2)(a) ("It is not the intent of either the FCC or TWC that this Contract create any
judicially enforceable rights in any other parties.  This Contract shall be enforceable against
TWC by the FCC exclusively and no other party may seek to enforce this Contract . . . except
that subscribers to TWC systems which increase their CPST rates will still have the right to file
complaints with the FCC to the extent permitted under applicable FCC rules.").  The Social
Contract is available at *http://www.fcc.gov/Bureaus/Cable/Orders/1995/fcc95478.txt*.  The Court
may consider the Social Contract in ruling on the Motion to Dismiss because the Social Contract
is a public, administrative document referenced throughout Plaintiff's Amended Complaint.  *See,
e.g., Great Plains Trust Co. v. Union Pacific R. Co.,* 492 F.3d 986, 989 (8th Cir. 2007) (court
may "consider . . . matters of public and administrative record referenced in the complaint");
*Enervations, Inc. v. Minnesota Mining and Mfg. Co.*, 380 F.3d 1066 (8th Cir. 2004) ("Though
'matters outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss,
documents 'necessarily embraced by the complaint' are not matters outside the pleading.").

### 3.     **Plaintiff's Claims Conflict With FCC Regulations**

TWC demonstrated in its Brief in Support that Plaintiff's claims are also

preempted because they conflict with the regulatory framework established by the

FCC.  Plaintiff's Brief fails to rebut this showing, as it ignores the following facts:

(1) while FCC regulations immunize a rate from attack one year after filing,

Plaintiff impermissibly seeks to invalidate TWC's rate *more than six years* after it

was allegedly established;[8] and (2) Plaintiff's lawsuit challenging an alleged rate

filing that was permitted by the LFA flies in the face of the FCC rule providing

that the FCC is the sole forum for challenges to an LFA's decision regarding BST

rates, including any Form 1235 component thereof.[9]  This irreconcilable conflict

between Plaintiff's claims and FCC regulations provides additional grounds for

preemption.  *E.g., Arkansas Louisiana Gas Co.*, 435 U.S. at 580 ("it would surely

be inconsistent with this congressional purpose to permit a state court to do

through a breach-of-contract action what the Commission itself cannot do.");

*Doyle,* 66 F.3d at 875 ("The statutorily authorized regulations of an agency will

---

[8]  *See Brief in Support* at 8-9, 21-22, *citing* 47 C.F.R. § 76.942(b) ("An operator's liability for refunds is limited to a one-year period . . ."); 47 C.F.R. § 76.933(g)(2) ("In the event the franchising authority does not act within this 12-month period, it may not at a later date order a refund or prospective rate reduction with respect to the rate filing.").

[9]  *See Brief in Support* at 9, 21-22, *citing* 47 C.F.R. § 76.944 (providing that FCC serves as the "sole forum for appeals of decisions by franchising authorities on rates for the basic service tier or associated equipment involving whether or not a franchising authority has acted consistently with the Cable Act or §§ 76.922 and 76.923.").

pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof.").

## C.    TWC WAIVES ITS RIGHT TO COMPEL ARBITRATION

To streamline and simplify the issues before the Court, TWC has withdrawn that part of its Motion to Dismiss or Alternatively Stay Proceedings that seeks dismissal or a stay of this action based on the terms of the arbitration clause contained in the applicable agreement between the parties.  TWC has affirmatively waived its right to compel Plaintiff to arbitrate the claims raised in this action. TWC respectfully requests that the Court rule on the remainder of its Motion to Dismiss based on the prohibitions of the filed rate doctrine and federal preemption, which mandate dismissal of Plaintiff's Amended Complaint in its entirety and with prejudice.

## III.    <u>CONCLUSION</u>

For all of the above reasons, as well as those stated in TWC's Brief in Support, Defendant respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice.

Dated:  January 25, 2008.

WARGO & FRENCH LLP


By:  s/ Joseph W. Ozmer II

Michael S. French (admitted *pro hac vice*)
Joseph W. Ozmer II (admitted *pro hac vice*)
1170 Peachtree Street,
Suite 2020
Atlanta, Georgia 30309
(404) 853-1510

KELLY & BERENS, P.A.

Timothy D. Kelly (#54926)
Tracey L. Baubie (#0224625)
3720 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 349-6171

***Attorneys for Defendant***

594466_1