**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| **Patricia Crumley,** | Civil No. 07-3946 (JNE/JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Time Warner Cable, Inc.,** | |
| Defendant. | |

---

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the undersigned on February 5, 2008 on a motion to dismiss (Doc. No. 14) by defendant Time Warner Cable. Bryan L. Bleichner, Esq.; Gary K. Shipman, Esq.; Karl L. Cambronne, Esq.; and T. Christopher Tuck, Esq. appeared on behalf of plaintiff Patricia Crumley. Joseph W. Ozmer, II, Esq.; Michael S. French, Esq.; and Timothy D. Kelly, Esq. appeared on behalf of defendant Time Warner Cable (TWC). The motion was referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(b).

**I.     BACKGROUND**

In this putative class action, plaintiff Patricia Crumley and others similarly situated are residents of Minneapolis who have subscribed for cable television through defendant TWC.[1] In her complaint, Crumley alleges that TWC made fraudulent misrepresentations in a ratemaking application, thus improperly obtaining an inflated rate for basic cable service, and overcharged for that service. From these allegations, she raises claims for unjust enrichment and for violation

---

[1] TWC has since transferred its interest in the Minneapolis cable system to Comcast Corporation, which has no involvement in the current litigation.

of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, and seeks a declaratory judgment regarding the lawfulness of TWC's conduct.

The relevant regulatory framework for basic cable rates is derived from provisions of the Cable Television Consumer Protection and Competition Act. It provides that these rates shall be reasonable, 47 U.S.C. § 543(b), and that in the absence of effective competition, reasonableness be assessed according to regulations promulgated by the Federal Communications Commission (FCC), 47 U.S.C. § 543(a). Because TWC did not face effective competition in Minneapolis, the parties do not contest that these regulations apply here.

The Act adds that the administration and enforcement of these regulations is committed to the local government authority where the cable system is located. 47 U.S.C. § 543(a). These authorities are referred to as "local franchising authorities" or LFAs. A cable operator who seeks an adjustment of cable rates must submit an application to the LFA, which in turn approves or denies the adjustment in accordance with FCC regulations. 47 C.F.R. § 76.933.

Once the LFA approves a rate increase, either by written order or through inaction, it has one year to reconsider the decision. After that period elapses, the operator is no longer liable for refunds. 47 C.F.R. §§ 76.933, 76.942. Any participant in the proceeding may appeal to the FCC within thirty days of the ratemaking decision by the LFA, and the FCC is the sole forum for appeal of such decisions. 47 C.F.R. § 76.944.

TWC applied for an adjustment of its basic cable rates in 2001, purportedly so it could recover the costs of forthcoming system upgrades.[2] The adjustment was not contested at the time

---

[2] TWC allegedly promised to perform the upgrades under the "social contract," a November 1995 agreement between the FCC and cable operators, which was intended to resolve several rate disputes at the time. Assuming that the promised upgrades arise out of TWC's obligations under the social contract, the issues raised by the current motion to dismiss do not require examination of the social contract or its relationship to the 2001 cable rate adjustment.

2

and went into force in accordance with FCC regulations. Crumley alleges that the upgrades were never performed and, for that matter, TWC never intended to complete the upgrades. For these reasons, Crumley contends the 2001 application was fraudulent and demands that rates collected for the upgrade be refunded.

TWC now moves to dismiss, arguing that the current litigation is barred under the filed rate doctrine and by principles of federal preemption.[3]

## II. DISCUSSION

TWC brings its motion to dismiss under Rule 12(b)(6). Under this rule, a defendant may seek dismissal where the allegations in the complaint are so deficient that they provide no cause for relief. *Quinn v. Ocwen Federal Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006). When considering this question, a court only examines the complaint, with all reasonable inferences for the plaintiff. *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

### A. Introduction

TWC principally argues that, because it duly filed its basic cable rates in accordance with the regulations of the FCC, litigation about those rates is prevented by the filed rate doctrine. Before moving to the merits of this argument, it is useful to review the bounds of the doctrine.

As a general rule, the filed rate doctrine provides that once a federal agency determines the lawful rate for a service, that rate cannot be modified or avoided in the courts. *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 573 (1981) [hereinafter *Arkla*]. The rationale for the doctrine is that, when Congress has committed ratemaking authority to a federal agency, courts

---

[3] In its motion to dismiss, TWC also sought stay or dismissal of this litigation under the Federal Arbitration Act. TWC has since represented, in its reply memorandum, that it is withdrawing its arguments in this area and so they are not addressed here.

3

cannot encroach upon this authority by permitting litigation that may contradict the lawful rate. *Maislin Indus., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 128-30 (1990).

Depending on how the doctrine is applied, it may be viewed as a rule of comity, based on federal courts' deference to executive agencies; or a rule of preemption, based on precedence of federal law over state law. *See Entergy Louisiana, Inc. v. Louisiana Public Service Comm'n*, 539 U.S. 39, 47 (2003); *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 964 (1986). Consistent with these concerns, federal appellate courts identify two underlying principles that are addressed through the doctrine: nonjusticiability and nondiscrimination. *See generally Hill v. BellSouth Communications*, 364 F.3d 1308, 1316 (11th Cir. 2004); *Fax Telecommunicaciones Inc. v. AT&T Corp.*, 138 F.3d 479, 488 (2d Cir. 1998).

Nonjusticiability means that a court should not make rulings in areas committed to the expertise of a federal agency. This inquiry is ordinarily guided by how a court will determine damages. Where the damages for a particular claim require the court to calculate the difference between a filed rate and a rate determined by the court, the claim involves the sort of judicial ratemaking that the filed rate doctrine is intended to prevent. *See, e.g., Bryan v. BellSouth Communications*, 492 F.3d 231, 237-38 (4th Cir. 2007); *Public Utility Dist. No. 1 v. Idacorp Inc.*, 379 F.3d 641, 651 (9th Cir. 2004).

Nondiscrimination is motivated by the concern that all recipients of a service receive the same rate for the service. If a court ruling means that different persons will receive a different rate for the same service, or where the ruling implicates difficult questions about what nonparties will pay for that service, then the filed rate doctrine will prevent judicial action. *See, e.g., Hill*, 364 F.3d at 1361-17; *Sun City Taxpayers' Ass'n v. Citizens Utilities Co.*, 45 F.3d 58, 62 (2d Cir. 1995).

4

B.     **Rates Procured by Fraud**

The parties argue, in part, about whether the filed rate doctrine should apply in cases of fraud. TWC argues that this litigation involves cable rates and, even if a fraud was involved, the filed rate doctrine still applies. Crumley responds that, because the fraud goes to the conduct of the regulated party rather than the rate itself, the doctrine should not apply.

This issue cannot simply be framed as whether or not the filed rate doctrine applies when fraud is alleged. Not every instance of fraud, by a regulated entity, will necessarily implicate the doctrine. This inquiry often turns on a careful examination of the circumstances, to determine whether the fraud involves the filed rate itself. *Compare Maislin Indus., Inc.*, 497 U.S. at 126 (noting that filed rate doctrine prevents action for fraud where a regulated entity represents that its rate is less than the filed rate), *with E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1045 (9th Cir. 2007) (rejecting application of the filed rate doctrine when certain filed rates were "misreported or wholly fictitious").

The circumstances here, however, are comparable to those in the Eighth Circuit decision of *H.J., Inc. v. Northwestern Bell Telephone Co.* 954 F.2d 485 (8th Cir. 1992). The court held that, when a regulated entity makes a fraudulent misrepresentation to an agency in a ratemaking proceeding, the filed rate doctrine prevents litigation about the resulting rate. *Id.* at 489-91. This case, moreover, is the leading one in this area and has been consistently applied by other circuits that consider the question. *See Transmission Agency of Northern California v. Sierra Pacific Power Co.*, 295 F.3d 918, 932 (9th Cir. 2002); *Wegoland Ltd. v. Nynex Corp.*, 27 F.3d 17, 20 (2d Cir. 1994); *Taffet v. Southern Co.*, 967 F.2d 1483, 1494-95 (11th Cir. 1992).

This rule is soundly supported by principles of nonjusticiability and nondiscrimination. Assuming that fraud is used to procure a rate from a federal agency, the measure of damages is

determined by comparing the fraudulent rate to a corrected rate. Because a court would be asked to determine the corrected rate, nonjusticiability is implicated. And if a court decrees a corrected rate, there may be concerns about enforcement that involve nondiscrimination. *See H.J., Inc.*, 954 F.2d at 492-93; *see also Wegoland*, 27 F.3d at 20-21.

In this litigation, Crumley contends that TWC made fraudulent misrepresentations in a ratemaking proceeding. Under any of the claims in her complaint, it would be necessary for a court to determine what a lawful rate for basic cable service would be, had there been no fraud. In accordance with the well-established rule from *H.J.*, the filed rate doctrine prevents Crumley from obtaining the relief she seeks here.

Although Crumley suggests an exception to the filed rate doctrine where the rate is procured by fraud, she does not cite authorities persuasively supporting an exception. *See Union Ink Co. v. AT&T Corp.*, 801 A.2d 361, 376-77 (N.J. Super. Ct. App. Div. 2002) (suggesting in dicta a fraud exception, with restitution awarded in lieu of damages); *Pink Dot, Inc. v. Teleport Communications Group*, 107 Cal.Rptr.2d 392, 398-99 (Cal. Ct. App. 2001) (acknowledging the federal filed rate doctrine, but concluding that no similar doctrine applies to ratemaking by state agencies under California law).

In support of her proposed exception, Crumley recounts some of the doubts that courts have expressed about the filed rate doctrine, and then suggests that the doctrine is susceptible to a narrower reading. Even after pointed attacks, however, federal courts have not been inclined to limit or overturn the doctrine. *See, e.g., MCI Telecommunications Corp. v. AT&T Corp.*, 512 U.S. 218, 234 (1994); *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 423 (1986); *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1089 (9th Cir. 2004); *Fax Telecommunicaciones Inc.*, 138 F.3d at 491.

Given the continued vitality of the filed rate doctrine, this Court cannot recommend a new and unprecedented exception here.  To the extent the filed rate doctrine is questioned, that issue is left to Congress, which may authorize court intervention in ratemaking procedures; or to the U.S. Supreme Court, which may assess on its own initiative whether the doctrine remains viable.  *See MCI Telecommunications*, 512 U.S. at 234 (noting that where an act of Congress commits ratemaking authority to a federal agency, and the filed rate doctrine prevents judicial intervention, concerns about the ratemaking procedure "address themselves to Congress, not the courts").

### C.    Conduct; Insufficient Service

Crumley raises a few other arguments against application of the filed rate doctrine, which this Court will address in turn.  Perhaps the most forceful argument is that her litigation arises out of the *conduct* of TWC, and not the resulting *rate*, and so the filed rate doctrine simply does not apply.

She contends the current litigation is not only an effort to redress fraud in the ratemaking application—which as this Court previously concluded, is barred by the filed rate doctrine—but also an effort to stop ongoing misrepresentations regarding improvements to the cable system.  Because TWC continued to collect an increased rate for basic cable service, yet did not use the increased rate to complete promised improvements, Crumley alleges there is an ongoing pattern of misconduct that does not otherwise implicate the doctrine.

This argument essentially depends on how Crumley frames her claim. Crumley asserts that her claims involve the conduct of, and services provided by, TWC. TWC counters that her concerns amount to a challenge to rates, and so the filed rate doctrine must apply regardless.[4]

The best starting point for analysis on this question is the decision of the U.S. Supreme Court in *AT&T Corp. v. Central Office Telephone, Inc.*, 524 U.S. 214 (1998) [hereinafter *Central Office Telephone*]. This case involved certain promised enhancements to telephone service, and under the applicable regulations, the filed rate included both regular telephone service and the enhancements. The issue was whether a customer could litigate about the service enhancements, through state common law claims, without violating the filed rate doctrine. *Id.* at 223.

Approaching this question, the Court was motivated by concern about nondiscrimination. Where enhancements are included with other services provided pursuant to a filed rate, the Court reasoned, the enhancements cannot be used to justify deviation from the filed rate. As the Court succinctly described this scenario, "Any claim for excessive rates can be couched as a claim for particular services and vice versa." *Id.* The Court concluded that, where enhancements are not separately billed as an extra cost but are included among services to be provided under the filed rate, the filed rate doctrine barred state law claims regarding the sufficiency of the enhancements. *Id.*

Applying this rule, subsequent appellate court decisions ask whether a particular service was included among those offered under the filed rate. If so, then litigation regarding the service

---

[4] TWC separately argues that, to the extent Crumley founds her argument on continuing fraud in rate collections, the allegations in her complaint do not describe such a continuing fraud. This Court observes that the amended complaint has few allegations to show a continuing fraud, and indeed, the existence of a continuing fraud must be inferred from other allegations. (*See* Compl. at 7-8.) Because the standard of review requires all reasonable inferences in Crumley's favor, this Court will assume that her complaint adequately alleges the sort of continuing fraud that she describes in her argument.

is barred by the filed rate doctrine.  *See AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 532-33 (3d Cir. 2006); *Boomer v. AT&T Corp.*, 309 F.3d 404, 419 (7th Cir. 2002); *ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 222-23 (2d Cir. 2001); *Imports, Etc., Ltd. v. ABF Freight Sys., Inc.*, 162 F.3d 528, 530-31 (8th Cir. 1998).

So the inquiry in the current litigation, which is evidently an issue of first impression, is whether the improvements promised by TWC are included among the services in the basic cable rate.  But this question is plainly answered by the allegations in the complaint and the applicable regulations of the FCC.

Crumley alleges that TWC obtained an adjustment of the basic cable rate, in 2001, so that it could recover the costs of improvements to the cable system.  The adjustment was made to the basic cable rate itself, in accordance with FCC regulations.  *See* 76 C.F.R. § 76.933 (describing procedure by which, to recoup system improvement costs, cable operator may obtain basic cable rate increase).  For this reason, the improvements were necessarily included among the services provided pursuant to the basic cable rate.

According to Crumley, TWC made ongoing misrepresentations regarding improvements to the cable system, and by doing so, collected excessive rates for basic cable service.  But these improvements are included among the services that are provided pursuant to the basic cable rate.  Crumley's claims regarding these improvements, therefore, must be deemed a challenge to the underlying rate for the purposes of the filed rate doctrine.  In accordance with the rule of *Central Office Telephone*, her claims are barred.

To support her argument that this litigation involves conduct, rather than rates, Crumley chiefly relies on two state court decisions.  In *Qwest Corp. v. Kelly*, a decision from the Arizona Court of Appeals, the court allowed actions for fraud and consumer fraud, based on allegations

9

that a telephone company improperly charged apartment tenants for maintenance.  59 P.3d 789, 791-92 (Ariz. Ct. App. 2002).  Because this case involved a question about whether the tenants should have been charged *at all*, rather than what charge was appropriate, the court held that the filed rate doctrine did not apply.  *Id.* at 801-02.

Unlike the plaintiffs in *Qwest*, Crumley does not argue about whether the basic cable rate should apply to her.  As the preceding analysis has shown, her claims essentially involve whether the rate was excessive or whether the service pursuant to the rate was inadequate, implicating the filed rate doctrine in either case.  The ruling in *Qwest* does not address Crumley's circumstances here.

Crumley also discusses the decision of the California Court of Appeals in *Spielholz v. Superior Court*.  104 Cal.Rptr.2d 197 (Cal. Ct. App. 2001).  The court held that *Central Office Telephone* does not apply where a regulated entity misrepresents the services it offers pursuant to a filed rate.  It reasoned that, if a regulated entity promises services pursuant to a filed rate, then the adequacy of the services does not implicate the rate, and so a customer may obtain restitution for the cost of inadequate services.  *Id.* at 206-07.

Though this case squarely supports Crumley's position, this Court finds it unpersuasive.  The *Spielholz* decision directly contradicts the principles of nondiscrimination set out in *Central Office Telephone*, by allowing individual customers to collaterally challenge the filed rate based on purported deficiencies in service.  The court attempts to distinguish itself on a theory of false advertising, but the underlying scenario is no different from others where the filed rate doctrine applies:  where an aggrieved customer claims that the regulated entity promised more pursuant to

the rate than was delivered, judicial action cannot restore the expectations of the customer.[5] *See Central Office Telephone*, 524 U.S. at 225; *Maislin Indus., Inc.*, 497 U.S. at 126-28.

### D.   Common Carrier

Crumley also asserts that, because TWC is not a common carrier, it is not subject to the filed rate doctrine. Her argument is founded on the Communications Act, which authorizes rate regulation of "common carriers" as the term is defined under the Act. *See* 47 U.S.C. §§ 153(10), 203. She contends that, because a cable operator is not a common carrier under this definition, TWC is not subject to the filed rate doctrine.

The underlying issue is whether the filed rate doctrine only applies to common carriers. Crumley has not cited any cases that suggest this limitation. To the contrary, the U.S. Supreme Court observed that the doctrine applies to the "spectrum of regulated utilities." *Arkla*, 453 U.S. at 577. When deciding whether an entity is subject to the doctrine, the question is whether its services are subject to federal rate regulation, not the type of entity involved. *See E. & J. Gallo Winery*, 503 F.3d at 1039-40.

Research fails to disclose any cases that examine whether the filed rate doctrine governs basic cable rates. But it is plain that the Cable Television Consumer Protection and Competition Act provides for regulation of such rates, and because federal rate regulation exists, the filed rate doctrine attaches. *See* 47 U.S.C. § 543; 47 C.F.R. § 76.933.

---

[5] At the motion hearing, Crumley offered a related argument that can be traced to *Spielholz*. She asserted that, to the extent a regulated entity is subject to liability for state law claims, the impact on rates is incidental and so the filed rate doctrine is not implicated. *See* 104 Cal.Rptr.2d at 208 (quoting *Nader v. Allegheny Airlines*, 426 U.S. 290, 299-300 (1976)).

This argument, however, misconstrues the doctrine. To determine whether the doctrine applies, a court focuses on how its judgment affects the rate itself, based on concerns about encroaching upon the regulatory prerogatives of federal agencies. The impact of a judgment on a regulated entity—including whether costs of liability cause the entity to apply for higher rates—is irrelevant because it does not involve the agencies' authority.

Crumley correctly notes that the filed rate doctrine originates out of cases that involve common carriers. At that time, the term common carrier was employed according to its historic definition, to mean businesses that transport freight or passenger traffic. *See Keogh v. Chicago & N.W. Rwy. Co.*, 260 U.S. 156, 161-62 (1922). Though the Communications Act also uses the term, it defines "common carrier" very differently, to include entities that provide certain forms of interstate communications. *See* 47 U.S.C. § 153(10).

There is no indication, however, that only common carriers are subject to the filed rate doctrine. A cursory review of case law reveals many instances where the doctrine is applied to other regulated entities, which are not described as common carriers. *See, e.g., Arkla*, 453 U.S. at 577 (natural gas); *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1224 (9th Cir. 2007) (electricity); *see also Cahnmann v. Sprint Corp.*, 133 F.3d 484, 487 (7th Cir. 1998) (noting that in modern administrative law, many of the same principles apply to both common carriers and other regulated utilities).

As Crumley correctly observes, under the Communications Act, a cable operator is not a common carrier. *See Federal Communications Comm'n v. Midwest Video Corp.*, 440 U.S. 689, 709 (1979). But as the preceding discussion shows, this fact is simply immaterial to whether the filed rate doctrine applies here.

To support her position, Crumley chiefly cites two state court cases: a decision from the Washington Supreme Court, *Tenore v. AT&T Wireless Services*, 962 P.2d 104 (Wash. 1998); and a decision from the New Jersey Superior Court, *Union Ink Co. v. AT&T Corp.*, 801 A.2d 361 (N.J. Super. Ct. App. Div. 2002). Both rule that mobile telephone companies are not subject to the filed rate doctrine. Neither ruling, however, hinges on whether a mobile telephone company is a common carrier. These cases reason that, because such companies are not subject to federal

rate regulation, there is no filed rate for which the filed rate doctrine applies.  *See Tenore*, 962 P.2d at 109-10 (citing 47 U.S.C. § 332(c)(3)); *Union Ink Co.*, 801 A.2d at 377.

These cases instead support the proposition that applicability of the filed rate doctrine depends on the existence of federal rate regulations.  Because federal rate regulations control the basic cable rates of TWC, it is subject to the doctrine here.  It is immaterial whether TWC is a common carrier or not.

### E.     Conclusion

This Court concludes that the filed rate doctrine applies, and so it is appropriate to grant TWC's motion to dismiss.  Because there is strong support for this outcome, consistent with the decisions of the U.S. Supreme Court and the Eighth Circuit, there is no need to reach the parties' arguments regarding preemption.[6]

## III.    RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. TWC's motion to dismiss (Doc. No. 14) be **GRANTED.**

2. All claims in this litigation be **DISMISSED** and judgment entered.

Dated this 7th day of March, 2008.           /s    *Jeanne J. Graham*

JEANNE J. GRAHAM
United States Magistrate Judge

---

[6] Crumley cites some authorities regarding preemption in her arguments against the filed rate doctrine, and it sometimes appears that she conflates the doctrine with the analysis required by federal preemption.  Although the U.S. Supreme Court describes the filed rate doctrine as one based on principles of preemption, *Nantahala Power & Light Co.*, 476 U.S. at 963-64, there is no indication that general preemption analysis overrides the filed rate doctrine, and courts have no difficulty distinguishing the two doctrines.  *See, e.g., Qwest Corp. v. Scott*, 380 F.3d 367, 371-75 (8th Cir. 2004); *Public Utility Dist. No. 1 v. Idacorp Inc.*, 379 F.3d 641, 646-51 (9th Cir. 2004). To the extent Crumley cites preemption cases in the context of her arguments against the filed rate doctrine, therefore, these cases do not require further discussion here.

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **March 21, 2008**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.