UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Patricia Crumley, on behalf of herself and all others similarly situated, | Court File No. 07-cv-3946 (JNE/JJG) |
| Plaintiff, | **PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| vs. | |
| Time Warner Cable, Inc., a division of Time Warner Entertainment Company, Inc., | |
| Defendant. | |

---

## INTRODUCTION

The Magistrate Judge recommended, based on a misreading of Plaintiff's Complaint and a misapplication of the filed rate doctrine, that this Court should dismiss the Complaint. Plaintiff alleged Defendant Time Warner Cable, Inc. (Time Warner) violated Minn. Stat. § 325F.69 (2006) by deceptively and unlawfully billing Crumley and others twice for the same upgrade.

The Magistrate Judge misread the Complaint to say that Plaintiff complained about an inflated rate for basic cable services.  Plaintiff never asserted that the rates themselves were unreasonable or inflated, only that Time Warner committed consumer fraud and was unjustly enriched by charging twice for a service upgrade.  (*See* Amended Complaint ("Compl."), ¶ ¶ 2, 48 [Docket No. 5].)

Moreover, in order to determine whether the filed rate doctrine applies, the court must analyze the impact its decision will have on agency procedures and rate determinations.  A judicial act constitutes rate regulation only if its principal purpose and direct effect are to control rates.  Plaintiff's claims do not impact agency procedures or rate determinations as Plaintiff challenged improper conduct that only *indirectly* affects the rate charged.

For the reasons stated in this Objection, as well as in Plaintiff's previous pleadings filed on January 10, 2008, this Court should reject the Magistrate's Report and Recommendation.

## **SUMMARY OF FACTS**

Plaintiff Patricia Crumley, a Minneapolis resident and former Time Warner subscriber, sued Time Warner on behalf of herself and all other similarly situated individuals and entities who, at any time from 2002 to the present, purchased any of Time Warner's cable services. (Compl. ¶ 1.) Plaintiff alleges that Time Warner unlawfully double billed for upgrades to its cable television service. (Compl. ¶ 23.) She asserts causes of action based on Minn. Stat. § 325F.69 and unjust enrichment.

In 1984, Congress passed the Cable Communications Policy Act of 1984 ("1984 Cable Act") that, for the most part, deregulated cable service rates. (Compl. ¶ 12.) By 1992 cable rates had increased at three times the rate of inflation, and as a result, Congress passed the Cable Television Consumer Protection and Competition Act of 1992 ("1992 Cable Act"), which regulated cable rates where effective competition did not exist. (Compl. ¶¶ 13-14.) Pursuant to the 1992 Cable Act, the primary method developed by the FCC for establishing initial rates for cable service was a "benchmark formula," designed to ensure that an operator's regulated rates did not exceed what the operator would charge if it faced effective

3

competition. (Compl. ¶ 20.) At the same time, the FCC realized that the benchmark approach might deny cable operators in high cost areas the opportunity to recover their legitimate costs, and it developed an alternative approach to establish initial cable rates based on cost-of-service showings. (*Id.*) Administration and enforcement of FCC regulations under the 1992 Cable Act was delegated to the local government in which the cable system was located, known as local franchising authorities (LFA).

By 1994, the FCC established a streamlined ("abbreviated") cost-of-service process for operators who had established their initial rates using the benchmark process but had an interest in recovering "significant capital expenditures" such as a fiber optic upgrade. (Compl. ¶ 21.) The requirements were captured in the Form 1235 by 1996. (*Id.*) The rationale behind the Form 1235 was to allow any cable operator to recover the costs-of-service portion of any upgrade by adding a network-upgrade surcharge, determined pursuant to a FCC Form 1235 filing, to the regulated service rates. (*Id.*) A Form 1235 would not and should not be filed unless a significant upgrade to the cable system had been completed. (*Id.*)

In 1996, Congress passed the Telecommunications Act of 1996 ("1996 Act") (Compl. ¶ 15), which removed the right of cable subscribers to file rate complaints directly with the FCC.

As a means of settling large numbers of individual rate complaints against various cable operators, the FCC negotiated and finalized a Social Contract around November 30, 1995 (Compl. ¶ 16).  In exchange, Time Warner was required to upgrade its cable systems in the majority of its service areas to 750 MHz service ("the upgrades"), which expanded capacity for additional television networks and advanced telecommunication services.  (*Id.*)

The FCC allowed Time Warner to pre-capitalize the approximately $4 billion cost of the upgrades by charging each subscriber in the LFA up to a total of $180.00, but no more, spread over five years, from 1996 through 2000.  (Compl. ¶ 17.)   From 1996 through 2000, Time Warner assessed and collected from its subscribers the allowed pre-capitalization surcharges and completed the promised upgrade to its cable system. (Compl. ¶ 19.)   TWC did not implement or complete any significant

upgrade of its cable system subsequent to the upgrade completed pursuant to the Social Contract. (Compl. ¶ 23.)

In 2001 Time Warner filed a Form 1235 with Minneapolis to recover the costs of additional system upgrades from its subscribers. But Time Warner did not accomplish any substantial upgrade to its cable system and then proceeded to charge its subscribers an upgrade fee twice for a prior upgrade. (*Id.*)[1]

## ARGUMENT

In reviewing a report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2(b); *Sliker v. Winn*, Civil No. 07-1564, 2008 WL 191298, at *1 (D. Minn. Jan. 23, 2008) (Erickson, J.).

---

[1] Time Warner did not file with the FCC a "Petition for Special Relief and for a Determination of Effective Competition" for the Minneapolis area, nor was any such petition granted revoking the City of Minneapolis' rate regulatory authority. (Compl. ¶ 24.)

I.      **The Magistrate Judge Erroneously Characterized Plaintiff's Complaint.**

Contrary to the Magistrate Judge's conclusion, Plaintiff's allegations against Time Warner do not involve the setting of rates. The Magistrate Judge mischaracterizes Plaintiff's Complaint. For example, the Court said that the Complaint alleges that TWC "[i]mproperly obtain[ed] an inflated rate for basic cable services and overcharged for that service." (Slip op. at 1). The Court also wrote that "Crumley alleges that the upgrades were never performed and for that matter [Time Warner] never intended to complete the upgrades. For these reasons, Crumley contends that the 2001 application was fraudulent and demands that the *rates* collected for that upgrade be refunded." (*Id.* at 3.) (emphasis added). Another example is the statement "[b]ecause a Court would be asked to determine the corrected rate, nonjusticiability is implicated." (*Id.* at 6.) Finally, the Court noted that "Crumley contends that [Time Warner] made fraudulent misrepresentations in rate making procedures." (*Id.*)

The Magistrate Judge also made a misstatement of fact. (*Id.* at 9.) The Court said that the promised "improvements are included among the services that are provided pursuant to the basic cable rate." (*Id.*) But

7

Plaintiff and the class were double billed by Time Warner because it submitted a Form 1235, which only is used by a cable operator to recover the costs-of-service portion of an upgrade by adding a network upgrade surcharge. It is not part of the regulated basic cable rate. A Form 1235 is *never* used by a cable company to approve rates for basic cable. Furthermore, the promised "improvement" was never included among any services provided by TWC because the "improvement" was never completed.

Respectfully, the Magistrate Judge did not grasp the essence of Plaintiff's Complaint. The Complaint, for example, plainly alleged that Time Warner "did not perform any subsequent substantial upgrade to its cable system other than the upgrade completed under the [Social Contract], [so] TWC was not eligible to file Form 1235 to recover any further network upgrade expenses" (Compl. ¶ 23), and "unlawfully overcharged customers for upgrades to its cable television service, for which it had previously been reimbursed from its customers located" in Minneapolis. (Compl. ¶ 2.) The Complaint also asserted that Time Warner concealed that "it had been reimbursed for the upgrades under the

8

[Social Contract] and was not entitled to recover any further reimbursements using Form 1235." (Compl. ¶ 48.)

By mischaracterizing the Complaint, the Magistrate Judge was able to pound a square peg (the Complaint) into a round hold (the filed rate doctrine). It does not fit. The result is both inconstant with the law and has the practical effect of allowing a cable company to file a Form 1235, fail to complete an upgrade, and charge its customers *twice* for a prior upgrade and leave the subscriber without a remedy because the filed rate doctrine allegedly precludes one. This result should not be ratified.

**II.     The Magistrate Judge Misapplied the Filed Rate Doctrine.**

Federal courts have held that the filed rate doctrine does not preclude application of a state's consumer protection laws, even when a rate has been approved by a state regulatory agency. *See, e.g., Blaylock v. First Am. Title Ins. Co.*, 504 F. Supp. 2d 1091, 1100 (W.D. Wash. 2007). Federal courts have also refused to apply the filed rate doctrine when rates were "misreported or wholly fictitious." *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1045 (9th Cir. 2007). Such is the situation here, where

9

Plaintiff does not challenge a regulated rate but instead claims she was double billed for the nonexistent service upgrade.

The Magistrate Judge did not address Plaintiff's argument that Time Warner's conduct of double billing for upgrade is actionable notwithstanding the filed rate doctrine. She used *AT&T Corp. v. Central Office Telephone, Inc.* 524 U.S. 214 (1998) to conclude that the service upgrade fee was included in the basic cable rate and hence a challenge to Time Warner's rates. The rates for an upgrade are not at issue. What is at issue is the right to charge twice for the same thing. The Magistrate Judge did not properly analyze federal law and the purpose and use of Form 1235.

As noted above, a cable operator uses Form 1235 to recover the costs-of-service portion of any upgrades by adding a network upgrade surcharge. Here, Time Warner filed Form 1235 for a network upgrade it supposedly *already* had completed. The upgrade charge was not "necessarily included" in the basic cable rate as the Magistrate Judge found (Slip op. at 9). The double billing network surcharge, which resulted from Time Warner's submission of Form 1235, was not part of the

10

basic cable rate. As noted, the filed rate doctrine does not preclude state consumer fraud claims that do not *directly* target a regulated rate.

The Magistrate Judge's distinguishing of two cases Plaintiff cited is not persuasive. The Court held inapplicable *Qwest v. Kelly*, 204 Ariz. 25 (Ariz. App. 2002) on the erroneous basis that Plaintiff here claimed that the basic cable rate was excessive. No such claim is made.

The Magistrate Judge's "nonjusticiability" reasoning is also flawed. In her recommendation, she states that "[w]here damages for a particular claim require the court to calculate the difference between a filed rate and a rate determined by the court, the claim involves the sort of judicial ratemaking that the filed rate doctrine is intended to prevent." However, there is difference between "ratemaking" and using a rate to calculate damages. While it is improper for a court to determine the reasonableness of a rate, courts have held that it is proper to take the rate charged into consideration when calculating damages. In this case, the relief sought is merely concluding that TWC can't collect for the same thing twice.

In *Qwest*, the Arizona Court of Appeals affirmed the lower court's denial of a utility's motion to dismiss, finding that the filed rate doctrine

did not preclude the tenants' fraudulent misrepresentation claim. The *Qwest* court held that "it is not the conduct of the defendant that controls 'whether the filed rate doctrine applies. Rather, the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations.'" *Id.* at 37 (quoting *H.J. Inc. v. NW. Bell Tel. Co.*, 954 F.2d 485, 489 (8th Cir. 1992)); *see also id.* (filed rate protection justified where *reasonableness* of rates approved by the regulatory agency at issue). Here, Plaintiff did not challenge the *reasonableness* of the Time Warner's rates, contrary to the Magistrate Judge's conclusion that Plaintiff's claims "essentially involve whether the rate was excessive." (Slip op. at 9.)

The Magistrate Judge correctly observed that *Spielholz v. Superior Court of Los Angeles County*, 86 Cal. App. 4th 1366, 1374 (Cal. Ct. App. 2001) held the filed rate doctrine does not apply where a regulated entity misrepresents the services it offers pursuant to a filed rate. The Magistrate Judge's determination that the case is unpersuasive, however, is not compelling. The Magistrate Judge found the holding in *Spielholz* was contrary to *Central Office Telephone*, which the Magistrate Judge

12

characterized as holding that judicial action cannot restore the expectations of a customer when the regulated entity promised more pursuant to the rate than was delivered.

If anything, the factual circumstances of *Central Office Telephone* are distinguishable here legally because that case involved discriminatory privileges, which is not involved here. 524 U.S. at 225. Moreover, the promises in *Central Office Telephone* (provisioning and billing, for example) were "covered" by the tariff, *id.*, unlike here where the basic cable rate did not cover system upgrades, particularly one never completed. The Court held that it made no difference that the regulated entity provided the same services, for free, to other customers. Thus, the reliance on *Central Office Telephone* to distinguish *Spielholz* is unpersuasive.

In *Spielholz*, the court held that a "judicial act constitutes rate regulation *only if its principal purpose and direct effect are to control rates*." *Id.* at 1374 (emphasis added). *Spielholz* involved claims for false advertising that the court found did not constitute direct regulation of rates. The *Spielholz* court elaborated:

> For example, an injunction that prevents a wireless telephone service provider from charging specified rates would directly

13

> regulate rates. Similarly, if a cause of action directly challenges a rate as unreasonable, an award of damages or restitution to compensate a customer for the difference between the rate paid and what the court determines to be a reasonable rate would directly regulate rates. In general, a claim that directly challenges a rate and seeks a remedy to limit or control the rate prospectively or retrospectively is an attempt to regulate rates and is therefore preempted. . . [A] claim that *directly challenges some other activity*, such as false advertising, and requires a determination of the value of services provided in order to award monetary relief is not rate regulation.

*Spielholz*, 86 Cal. App. 4th 1366, 1374-75 (emphasis added); *see also Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 374 (N.J. Super. 2002).

Here, Plaintiff has not directly challenged the basic cable rates charged by Time Warner, and Plaintiff is not requesting this Court to regulate Time Warner's basic cable rates. Plaintiff alleged that Time Warner violated Minnesota's consumer protection law by double billing upgrade expenses when, in fact, Time Warner performed no upgrades and furthermore had previously received reimbursement under the Social Contract. Under such circumstances, Plaintiff's claims are not barred by the filed rate doctrine.

Finally, the Magistrate Judge gave undue weight to *H.J. Inc. v. Northwestern Bell Telephone Co.*, 954 F.2d 485 (8th Cir. 1992). She noted that

14

"when a regulated entity makes a fraudulent misrepresentation to an agency in a ratemaking proceeding, the filed rate doctrine prevents litigation about the resulting rate." (Slip op. at 5.) Contrary to the Magistrate Judge's observations, the facts of *H.J. Inc.*, which involved RICO and allegations of bribery, are not comparable in the least. The Eighth Circuit in that case held the filed rate doctrine applied because it prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct at issue. *Id.* at 488. The plaintiffs in that case sought to recover based on an excessive rate. This circumstance is not involved here since Plaintiff does not directly challenge the basic cable rate itself as excessive or unreasonable, only that Time Warner double billed for a service upgrade that was not part of, and never became part of, basic cable services.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court reject the Report and Recommendation suggesting Plaintiff's Complaint be dismissed and rule that the filed rate doctrine does not preclude Plaintiff's consumer fraud and unjust enrichment claims.

Dated:   March 20, 2008                          **CHESTNUT & CAMBRONNE, P.A.**

By /s/  Karl L. Cambronne
   Karl L. Cambronne, #14321
   Jeffrey D. Bores, #227699
   Brian N. Toder, #17869X
   Bryan L. Bleichner, #0326689
   3700 Campbell Mithun Tower
   222 South Ninth Street
   Minneapolis, MN 55402
   (612) 339-7300
   Fax:  (612) 336-2940

A. Hoyt Rowell, III
T. Christopher Tuck
James L. Ward, Jr.
RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, L.L.C.
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
(843) 727-6500
Fax:  (843) 216-6509

Gary K. Shipman
William G. Wright
SHIPMAN & WRIGHT, LLP
575 Military Cutoff Road
Suite 106
Wilmington, NC 28405
 (910) 762-1990
Fax:  (910) 762-6752

Michael W. Sobol
Joseph R. Saveri
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, Suite 3000
San Francisco, CA 94111-3339
(415) 956-1000
Fax:  (415) 956-1008

**ATTORNEYS FOR PLAINTIFF**