UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Patricia Crumley,
on behalf of herself and all
others similarly situated,

      Plaintiff,

v.                                        Civil No. 07-3946 (JNE/JJG)
                                              ORDER

Time Warner Cable, Inc.,

      Defendant.

---

Karl L. Cambronne, Esq., Bryan L. Bleichner, Esq., and Jeffrey D. Bores, Esq., Chestnut & Cambronne, PA, appeared for Plaintiff Patricia Crumley.

Joseph W. Ozmer II, Esq., and Michael S. French, Esq., Wargo & French, LLP, and Tracey L. Baubie, Esq., Kelly & Berens, PA, appeared for Defendant Time Warner Cable, Inc.

---

Crumley brings this action against Time Warner Cable, Inc. (TWC), alleging that TWC "deceptively and unlawfully overcharged customers for upgrades to its cable television service, for which it previously had been reimbursed," and seeking both money damages and declaratory relief. The case is before the Court on a Report and Recommendation issued by the Honorable Jeanne J. Graham, United States Magistrate Judge, on March 7, 2008. The magistrate judge recommended that TWC's motion to dismiss be granted. Crumley objected to the Report and Recommendation, and TWC responded to the objections. For the reasons stated below, the Court adopts the Report and Recommendation and grants TWC's motion to dismiss.

## I.    BACKGROUND

To ensure that basic cable service rates in noncompetitive markets are reasonable, such rates are subject to Federal Communications Commission (FCC) regulations that are implemented and supplemented by local franchising authorities. *See* 47 U.S.C. § 543(a), (b)(1)

1

(2000). Cable operators undertaking "significant network upgrades requiring added capital investment" may seek to recover upgrade costs by filing a Form 1235 with the appropriate local franchising authority. *See* 47 C.F.R. § 76.922(j) (2007). If the local franchising authority approves the request, either affirmatively or by inaction, an additional amount may be added to the basic cable rate. *See id*. Such costs cannot be recovered until the upgrade has been completed and begins providing benefits to customers.[1] *Id*. The parties do not dispute that these regulations apply in the present case.

In her first amended complaint, Crumley asserts that the FCC and various cable providers, including TWC, entered into an agreement in 1995 to settle large numbers of rate complaints against the providers. Crumley claims that this agreement, known as the "social contract," required TWC to perform certain upgrades to its cable systems and allowed TWC to recover certain costs attributable to the upgrades via surcharges to customer bills from 1996 to 2000. TWC allegedly completed the required upgrades and collected the maximum amount of cost-related surcharges permitted under the social contract.

Crumley claims that TWC filed a Form 1235 on October 2, 2001, even though it had completed no upgrade other than the one required by the social contract. An additional charge was approved by the relevant local franchising authority—apparently through inaction rather than affirmative approval—and TWC proceeded to levy the resulting surcharge. Crumley claims that, by billing its customers this additional amount, TWC overcharged or double-charged customers for the upgrades made pursuant to the social contract in violation of the cost-recovery limits in the social contract.

---

[1] The parties agree that the Report and Recommendation is inaccurate to the extent that it states that such costs may be recovered before completion of the upgrade.

Crumley brought this putative class action on behalf of herself and all other individuals and entities located in Minneapolis, Minnesota, that bought TWC's cable services at any time between 2002 and the present, excluding individuals and entities with certain ties to TWC or that have commenced separate lawsuits. Crumley alleges that TWC's actions and representations violated the Minnesota Prevention of Consumer Fraud Act, and she alleges that TWC's "overcharge" constitutes unjust enrichment. Crumley seeks, among other things, restitution, money damages, and a declaration that TWC unlawfully filed a Form 1235 when in fact there were no eligible upgrade costs to be recovered.

The magistrate judge recommended that TWC's Rule 12(b)(6) motion to dismiss be granted on the ground that Crumley's claims are barred by the file rate doctrine. Crumley objected, TWC responded, and the Court heard the parties' arguments on April 25, 2008.

## II.   DISCUSSION

As explained in the Report and Recommendation, the cable rates at issue in this action are subject to federal regulation, *see* 47 U.S.C. § 543; 47 C.F.R. § 76.922, and therefore lawsuits related to those rates may implicate the filed rate doctrine, *cf.* 47 U.S.C. § 543(a)(1) ("No Federal agency or State may regulate the rates for the provision of cable service except to the extent provided under this section and section 532 of this title."). Under the filed rate doctrine, once a rate subject to regulation has been set or approved by the appropriate agency, a court may not review, alter, or invalidate it. *See Wegoland Ltd. v. Nynex Corp.*, 27 F.3d 17, 19 (2d Cir. 1994) ("Simply stated, the doctrine holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers."); *H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 490 (8th Cir. 1992) (indicating that a court may not "second-guess" a rate-making authority). This prohibition on review of filed rates

is broad, extending so far as to bar claims "when the measure of damages is determined by comparing the approved rate and the rate that allegedly would have been approved absent the wrongful conduct." *H.J. Inc.*, 954 F.2d at 488.

Two rationales support the filed rate doctrine. First, "application of the filed rate doctrine prevents discrimination in rates paid by consumers because victorious plaintiffs would wind up paying less than non-suing ratepayers." *Wegoland*, 27 F.3d at 21. Second, the filed rate doctrine "preserve[s] the regulating agency's authority to determine the reasonableness of rates." *H.J. Inc.*, 954 F.2d at. 488. By ensuring that rate-making decisions are made by the designated agencies, the doctrine both ensures that those decisions are informed by the agencies' experience and expertise and preserves the stability of the larger regulatory framework in accord with legislative intent. *See Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 964 (1986) (indicating that judicial interference with regulated rates "usurp[s] a function that Congress has assigned to a . . . regulatory body" (quotation omitted)); *Wegoland*, 27 F.3d at 21 (discussing special competence of regulating agency and indicating that judicial interference with rate-making may undermine the regulatory regime).

In her objections to the Report and Recommendation, Crumley argues that the magistrate judge misread her first amended complaint. She claims that she does not challenge any rate as unreasonable or inflated but instead alleges only that TWC impermissibly "overcharged" or "double billed" its customers. Crumley further argues that the filed rate doctrine should not apply to her claims because she does not seek to have the Court directly regulate TWC's rates and, to the extent that she challenges a filed rate, she does so only indirectly.

Under the facts and circumstances of this case, the Court concludes that these are distinctions without differences. For Crumley to prevail on her claims, the Court must invalidate

4

a filed rate, *i.e.*, the additional charge stemming from TWC's Form 1235. Moreover, the first amended complaint alleges that Minnesotans outside of Minneapolis paid the additional charge levied pursuant to TWC's Form 1235. If that allegation is proved true, *cf. Midwestern Mach., Inc. v. Northwest Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir.1999) ("When ruling on a [Rule 12(b)(6)] motion to dismiss, courts are required to accept the complaint's factual allegations as true."), recovery by Crumley's Minneapolis-based class could mean other Minnesota-based TWC customers would face a higher effective rate than that paid by class members. For these reasons, the filed rate doctrine applies to bar Crumley's claims.

The Court notes that the regulatory scheme at issue in this case provides for rate refunds in certain instances, but the scheme also limits when and for what periods such refunds may be ordered. *See* 47 C.F.R. § 76.933(g)(2) (2007) ("In the event that the franchising authority does not act within this 12-month period, it may not at a later date order a refund or a prospective rate reduction with respect to the rate filing."); *id.* § 76.942(b) (2007) ("An operator's liability for refunds [is] limited to a one-year period [with one exception]."). In general, permitting recovery outside of the regulatory process would undermine the limited nature of provider liability and constitute the sort of judicial interference in the regulatory scheme that the filed rate doctrine is supposed to prevent. *See Wegoland*, 27 F.3d at 21 ("Apart from participating in the political process and filing complaints with the regulatory agencies, individual ratepayers simply have no role in attacking the reasonableness of filed rates."); *Taffet v. S. Co.*, 967 F.2d 1483, 1491, 1494 (11th Cir. 1992) (en banc) ("Given that the [relevant agencies] are equipped to take the defendants' fraud into account in setting future rates, a court's award of damages against a utility for 'fraudulent rate-making' would be unnecessarily disruptive to the state's scheme of utility regulation.").

Finally, Crumley cannot avoid application of the filed rate doctrine on the ground that the results are seemingly harsh. *See Maislin Indus. v. Primary Steel, Inc.*, 497 U.S. 116, 128 (1990). Nor are Crumley's claims spared by her contentions that TWC only obtained approval for the rate at issue through false representations to the rate-making authority. *See Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*, 45 F.3d 58, 62 (2d Cir. 1995) (stating, in a RICO case, that "claims premised upon alleged fraud perpetrated by utilities upon a rate-setting agency are barred by the filed rate doctrine" because determination of damages would necessarily require a court to discern what rate would have been reasonable absent the alleged fraud); *Wegoland*, 27 F.3d at 21 (holding that a joint RICO/state-law action involving telephone companies that allegedly misled a regulatory agency to obtain approval of higher rates was barred by the filed rate doctrine); *Taffet*, 967 F.2d at 1491, 1494 (en banc) (indicating plaintiff could not maintain a RICO action where utility companies allegedly obtained fraudulent rate increases by understating their net income to the agency charged with approving rates).

### III.    CONCLUSION

The Court has conducted a de novo review of the record. *See* D. Minn. LR 72.2(b). Based on that review, the Court adopts the Report and Recommendation. Therefore, IT IS ORDERED THAT:

1. Defendant's motion to dismiss [Docket No. 14 ] is GRANTED.
2. This case is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  May 12, 2008

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge